IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:99CV50-MU-02

| | |
|---|---|
| JAMES EDWARD MILLER,<br>    Plaintiff,<br><br>    v.<br><br>BUTCH HOLLAND, Police Officer,<br>    Defendant. | )<br>)<br>)<br>)    **O R D E R**<br>)<br>)<br>)<br>) |

**THIS MATTER** comes before the Court on remand from the Fourth Circuit Count of Appeals by mandate Order of April 8, 2004 (document # 62); on the plaintiff's "Motion For [A]n [A]dditional [O]rder Requiring Defendants Pierce and Pendry [T]o [F]ile [A] [B]rief [A]ddressing [T]he Plaintiff's [C]laim [T]hat [H]is [C]hild [C]ustody [R]ights [W]ere Violated," filed April 19, 2004 (document # 64); on the defendant's "Brief" in response to the Court's Order of March 29, 2004, filed April 23, 2004 (document # 65); on the plaintiff's "[M]otion [U]nder Rule 11 [F]or [S]anctions [A]gainst Captain Butch Holland [And] Law Firm Patrick, Harper [A]nd Dixon Law Firm [sic] McElwee," filed September 16, 2005 (document # 67); on the plaintiff's "Motion For A Hearing," filed October 4, 2005 (document # 70); and on the plaintiff's "Motion [O]f Assignment [O]f [C]ase [F]or Trial [and for the appointment of Counsel]," filed May 5, 2006 (document # 71).

For the reasons stated herein, and for the further reasons set forth in the defendant's Brief, the plaintiff's Motion for an Additional Order will be <u>denied</u>; the plaintiff's Motion for Rule 11 Sanctions will be <u>denied</u>; the plaintiff's Motion for a Hearing will be <u>denied</u>; and the plaintiff's Motion of Assignment will be <u>denied</u>. Most critically, the Court has determined that the sole remaining defendant is entitled to a summary judgment on the plaintiff's claim that he violated the plaintiff's child custody rights. Therefore, that claim also will be <u>denied</u> and this action will be <u>dismissed</u>.

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

As the Court has recounted in several of its prior Orders, on March 29, 1999, the plaintiff filed a civil rights Complaint under 42 U.S.C. 1983, seeking millions of dollars in compensatory and punitive damages based upon his allegations that several members of the North Wilkesboro Police Department (NWPD hereafter) had violated his constitutional rights.[1] Pertinent to the single claim which was remanded to this Court from the Fourth Circuit Court of Appeals, the plaintiff alleged that defendant Butch Holland, an officer of the NWPD violated his right to Due Process when Holland told "lies" to a Judge, resulting in the plaintiff's

---

[1] The plaintiff's Complaint also included numerous allegations against several other law enforcement officers. However, those matters were not related to the instant Complaint against defendant Holland, and this Court's dismissal of those claims was affirmed on appeal by the Fourth Circuit Court of Appeals. Therefore, those other claims are not part of this Order.

son being taken away from him for a two week period.  More
particularly, the plaintiff alleged that on June 9, 1998, he
traveled to Charlotte to pick up his minor son from his then-
estranged wife (Angela Miller) pursuant to an Order signed by
Michael Helms, a North Carolina District Court Judge, which gave
him custody of his son.  However, on that date, defendant
Holland allegedly advised Judge Helms that the plaintiff's minor
son was a "State's witness" in an investigation involving the
plaintiff.  As a result, the plaintiff's son was taken away from
him and returned to his mother until June 23, 1998, when Judge
Helms ordered that the child be returned to the plaintiff.
According to the plaintiff, defendant Holland's actions were
taken "for the personal purpose of har[]assment" (see document #
1, Complaint at p. 12).

On April 13, 2000, the defendant filed an Answer to the
plaintiff's Complaint (see document # 37).  By his Answer, the
defendant admitted that he had informed Judge Helms that the
plaintiff's son was "a potential witness against the plaintiff in
an investigation for sexual offenses with a minor."  However,
defendant Holland denied the other portions of the plaintiff's
allegations.

Next, on October 23, 2002, the plaintiff filed a Partial
Motion for Summary Judgment, essentially reiterating all of the
contentions in his Complaint (see document # 43).  However, it

3

was by his supporting Declaration that the plaintiff clarified his so-called due process claim. That is, in his Declaration, the plaintiff asserted that his due process rights were violated when defendant Holland ordered two other officers to stop the plaintiff and take custody of his son, all in violation of the plaintiff's child custody Order and in the absence of any judicial authorization for Holland's action (see document # 43, para. ## 16 through 24).

Thereafter, on October 25, 2002, the defendant's Motion for Summary Judgment and Brief were filed. By those documents, defendant Holland admitted that the plaintiff's minor son had been taken away from him and temporarily returned to the custody of his mother. However, defendant Holland asserted that such action had been taken pursuant to a validly obtained Court order. Therefore, Holland argued that there were no genuine issues of material fact concerning whether he could be held liable to the plaintiff, and that he was entitled to judgment as a matter of law.

In support of his Motion, Officer Holland also submitted his own Affidavit in support of his Summary Judgment Motion. By that document, Holland asserted that in 1998, he was investigating the plaintiff for numerous sexual offenses which had been committed against various minor girls. Holland stated that during the course of that investigation, he came to believe that the plain-

tiff's son had information pertinent to his investigation, and so he scheduled a meeting with the plaintiff's estranged wife and their son.  Holland further stated that prior to the time that such meeting was held, he learned that Angela Miller was going to allow visitation between her son and the plaintiff.  As a result, defendant Holland advised a District Attorney of that development, and the District Attorney sought and obtained a protective custody order from Judge Helms.  According to defendant Holland, Judge Helms did, in fact, issue an order which authorized officers of the NWPD to detain Angela Miller and her son for questioning.

Defendant Holland's affidavit further stated that pursuant to that order, Ms. Miller and her son were detained and subsequently interviewed by Judge Helms.  During that interview, the plaintiff's son reportedly advised that he actually had seen the plaintiff taking pictures of several young girls.[2]

Last, defendant Holland's Affidavit stated that he did not take any of the foregoing actions for the purpose of harassing the plaintiff.  Rather, the defendant stated that he conducted his investigation of the plaintiff in the same manner as he would have conducted an investigation of any other individual; and that he did not single the plaintiff out for any reason.  In any

---

[2] In fact, defendant Holland's investigation led to the plaintiff's having been charged and convicted of multiple counts of first degree sexual offense against minors.  Currently, the plaintiff is serving more than 10 years imprisonment for his convictions.

5

event, defendant Holland did not provide the Court with a copy of Judge Helms' order.

On November 4, 2002, the plaintiff's "Brief In Opposition . . ." was filed. In that Brief, the plaintiff asserted that the defendant's statements were false and unsupported by extrinsic documentation, i.e., the Court order which authorized officers to take his son from him. Further, the plaintiff contended that there were genuine factual disputes which made summary judgment inappropriate.

The plaintiff also submitted a "Declaration [I]n [O]pposition . . . " and a "Statement Of Disputed Factual Issues" with his Brief. Such documents reiterated the plaintiff's assertion that there were genuine issues of material fact which needed to be resolved by the Court. Last, the plaintiff submitted his own Affidavit and Affidavits from Angela Miller and her mother (Freda Johnson), all in opposition to the defendant's Motion for Summary Judgment.

Pertinent to his surviving claim, the plaintiff's Affidavit stated that on the day before his son was taken away from him, Judge Helms had issued an Order giving him custody of his son; that Judge Helms never issued an order giving any officer of the NWPD authority to take custody of his son; and that his son never told Judge Helms that he had observed his father taking pictures of girls.

The plaintiff's former wife's affidavit stated that on June 9, 1998, the plaintiff came to Charlotte and took custody of their minor son; that after the plaintiff and their son left, she contacted Officer Holland and advised that she would help in the plaintiff's sex offense investigation if Holland would help her regain custody of her son; that she did not tell Officer Holland that her son was in danger; and that she was never interviewed by Judge Helms, and she did not witness her son tell the Judge that he had observed his father's unlawful behavior. Rather, Ms. Miller stated that she and her son were interviewed several weeks after the June 9 incident, but she failed to disclose what she told officers during that interview.

As for Ms. Johnson, a review of her Affidavit demonstrates that her statements were consistent with those of Angela Miller. However, Ms. Johnson's statements do not appear to be based upon Johnson's personal knowledge. That is, Johnson reports that on June 9, 1998, she was at her home in Wilkesboro, and was not with the plaintiff, her daughter or her minor grandson. Ms. Johnson's statements are based upon telephone calls which she had with the plaintiff and her daughter. Thus, Ms. Johnson's Affidavit was of little value to the Court.

Months later, on February 2, 2003, the plaintiff submitted an Affidavit from Gregory Brewer, an attorney who represented him in his custody dispute with Angela Miller. According to Mr.

7

Brewer's Affidavit, on June 9, 1998, the plaintiff asked for his assistance with "potential child custody issues." Brewer's Affidavit further stated that on that date, he went to Judge Helms' office to speak with him; that a few moments after his arrival, defendant Holland arrived at the Judge's office; and that, although he did "not recall the exact conversation . . ." between Holland and the Judge, he did recall that the conversation was "in general about [the plaintiff's] son and that the child would be a 'material witness' to something."

After carefully considering all of the parties' submissions, on September 16, 2003, this Court entered an Order by which, among other things, it denied the plaintiff's Motion for Partial Summary Judgment. On the other hand, the Court granted the defendant's Motion for Summary Judgment. Such decisions were premised on this Court's findings that the defendant had shown, <u>inter alia</u>, that the plaintiff's minor son was taken away from him (and returned to his mother, Angela Miller) pursuant to a court order which directed that such action be taken; and that, in any case, the plaintiff's son was not permanently taken away from him. Therefore, the Court found that the plaintiff could not prevail on his claim of a due process violation.

On appeal, the appellate Court agreed with much of this Court's analysis, and it affirmed this Court's dismissal of all of the other claims and defendants. <u>See</u> <u>Miller v. Cheek, et al.</u>,

No. 03-7534, slip op. at 2 (4th Cir. March 16, 2004).  However, the appellate Court found it significant that the plaintiff had produced a copy of the Order by which Judge Helms had given him custody of his son on June 8, 1998 (the day before the incident in question), but defendant Holland had failed to produce a copy of the order by which Judge Helms reportedly had authorized NWPD officers to remove the child from the plaintiff on June 9, 1998. Id.  The appellate Court concluded that such circumstances raised a genuine issue of material fact as to whether "the defendants were acting pursuant to a court order, or in contravention of one . . . ."  Id.  Therefore, the appellate Court remanded this case for a resolution of that question.

Consequently, on March 29, 2004, the undersigned entered an Order, directing defendant Holland to file a brief, fully addressing the claim that the plaintiff's son was taken away from him without court authorization.  Such Order also directed the defendant to produce a copy of the order upon which that removal was based.

To that end, on April 23, 2004, the defendant filed his Brief in response to the Court's March 2004 Order.  By that document, the defendant argues that since he can establish that the plaintiff's minor son temporarily was taken from him pursuant to a State court order, the plaintiff cannot prevail on his claim. In support of his argument, the defendant has re-submitted his

own affidavit, along with an affidavit from Judge Helms.

Turning now to Judge Helms' Affidavit, such document reports that on June 9, 1998, Officer Holland approached him to discuss the circumstances which were developing in connection with Holland's investigation of the plaintiff on the sex offense allegations. In particular, Judge Helms' Affidavit states that Officer Holland advised him of his investigation and of his belief that the plaintiff's minor son had witnessed the offenses. Officer Holland also reportedly advised the Judge that the plaintiff had left town in order to pick up his son, but would be returning to town with the child. Based on those circumstances, the Judge and Officer Holland agreed that the plaintiff's son could be in danger.

Further, Judge Helms' Affidavit notes that during the course of his meeting with Officer Holland, officers from the NWPD called Holland to advise that they had just observed the plaintiff driving past with his son. As a result, Judge Helms—not defendant Holland—"orally authorized a stop of the Miller vehicle for the purpose [of] having [his son] taken into temporary protective custody." In addition, Judge Helms' Affidavit reports that he "signed a written order to that effect shortly thereafter." Most critically, Judge Helms' Affidavit reports that such written order "apparently was never properly filed in the Clerk of Court's Office or has since been lost, as it cannot now be

10

located."

For his part, on May 7, 2004, the plaintiff filed his Brief in Opposition to the Defendant's Brief. Primarily, the plaintiff's brief rehashes much of the factual recitations which he previously presented to the Court. In addition, however, the plaintiff takes issue with the fact that the defendant has failed to produce a copy of the Order which authorized officers of the NWPD to detain his son; and he contends that the question of whether or not his son was lawfully taken from him cannot be settled by an affidavit explaining that the subject Order is lost. Indeed, the plaintiff speculates that Judge Helms' Affidavit is little more than an attempt by the defendant to circumvent this Court's directive that he produce the order in question. Moreover, the plaintiff contends that Judge Helms' Affidavit fails to prove the critical issue of whether, at the time his son was taken from him, such action was authorized by the Court.

However, this Court finds that Judge Helms' Affidavit is more than sufficient to answer the critical question--as the appellate Court identified it--of whether officers acted pursuant to or in contravention of a court order when they removed the plaintiff's son from him. That is, by the Judge's own sworn representations, he establishes that he verbally authorized officers of the NWPD to take the plaintiff's son into custody at the time that they stopped the plaintiff's vehicle; that he also

11

signed a written order, memorializing that verbal directive; and that his written order has been lost.

While the plaintiff attempts to make an issue of certain inconsistencies which exist between defendant Holland's Affidavit and Judge Helms' Affidavit, this Court does not find those matters to be material to the critical issue which this Court was charged with addressing. To be sure, the fact that defendant Holland's affidavit reports that Judge Helms interviewed Angela Miller and her son on the day the child was taken from the plaintiff, but Judge Helms' Affidavit fails to mention the interview is of little consequence since such an interview would have taken place <u>after</u> the Judge ordered that the child be taken into custody.

Similarly, defendant Holland's recollection that it was the District Attorney who actually obtained the subject Order (not he, himself) does differ from Judge Helms' recollection that it was the defendant who sought and obtained the subject order. However, inasmuch as the Judge's recollection is consistent with the Affidavit of the plaintiff's own witness--his former Attorney who recalled seeing defendant Holland come to the Judge's office and discuss the plaintiff's son, the Court finds that the Judge's recollection is the more reliable one on that matter.

Likewise, while the plaintiff's assertions that defendant Holland did not attempt to obtain Court authorization to take

away his son until <u>after</u> he already had told officers to take the boy simply is belied by the sworn statements of a State Superior Judge who, quite frankly, is the only affiant who has no apparent motive to deceive this Court.  Therefore, this assertion also must be rejected.

Moreover, the plaintiff misapprehends the significance of the fact that he had a custody Order which authorized him to take his son from Angela Miller.  Indeed, this record conclusively shows that the plaintiff's Order was issued on the day before Judge Helms executed his order authorizing NWPD officers to take the plaintiff's son away from him.  Therefore, the latter order superceded the former, and was the order which was to be enforced on the date in question.

To put it simply, the plaintiff has provided this Court with little more than speculation and conjecture to overcome the defendant's evidentiary forecast which establishes that NWPD officers were authorized to take custody of the plaintiff's son on the date in question.  However, it is well settled that "mere speculation or building of one inference on another" is insufficient to overcome summary judgment.  <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u> 477 U.S. 242, 249-50 (1986) (noting that mere allegations or denials also are insufficient to overcome summary judgment).

In this instance, then, the defendant has sustained his

burden of showing that there is an absence of evidence to support the plaintiff's claim that his son was taken away without court authorization. <u>Cray Communications, Inc. v. Novatel Computer Sys., Inc.</u>, 33 F.3d 390, 393-94 (4th Cir. 1994) (explaining that the burden on the moving party may be discharged by showing an absence of evidentiary support for nonmovant's claim). Therefore, the Court finds that the defendant is entitled to a summary judgment on this remaining claim.

Finally, the Court notes that on April 19, 2004, the plaintiff filed his so-called Motion for Additional Order, essentially seeking to reinstate this action against Officers Pierce and Pendry. However, inasmuch as the Court now has determined that the plaintiff's son was temporarily removed from him pursuant to an order from Judge Helms, the plaintiff simply cannot hold either defendant Holland, Officer Pierce or Officer Pendry liable for that action. Therefore, this Motion will be <u>denied</u>.

Next, the plaintiff has filed a Motion for Rule 11 Sanctions (document # 67). By this Motion, the plaintiff argues that the defendant and all of the defense lawyers should be sanctioned because defendant Holland "perjured himself on several occasions" by stating, among other matters, that the plaintiff's son had been taken away from plaintiff pursuant to a court order. However, this Court has concluded--on the basis of Judge Helms' Affidavit--that such an order did exist, and the plaintiff's

14

other statements have not been proven false. Therefore, this baseless Motion for Sanctions also will be <u>denied</u>.

Last, in light of the fact that the defendant is entitled to summary judgment, it goes without saying that the plaintiff's Motion for a Hearing regarding his Motion for sanctions (document # 70), and his "Motion Of Assignment Of Case For Trial" (document # 71) both must be <u>denied</u>.

**NOW, IT IS THEREFORE ORDERED:**

1. That the plaintiff's Motion for Additional Order [document # 64] is **DENIED**;

2. That the plaintiff's Motion for Rule 11 Sanctions [document # 67] is **DENIED**;

3. That the plaintiff's Motion for Hearing [document # 70] is **DENIED**;

4. That the plaintiff's Motion of Assignment of Case for Trial [document # 71] is **DENIED**; and

5. That the plaintiff's sole claim of a due process violation is summarily **DENIED** and **DISMISSED**.

**SO ORDERED.**

Signed: June 28, 2006

Graham C. Mullen
United States District Judge